**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JAQUAN REDDICK**,<br><br>                    Plaintiff,<br><br>            v.<br><br>**MARCUS O. HICKS, et al.**,<br>                    Defendants. | Civil Action No. 22-06926 (ZNQ) (RLS)<br><br>**OPINION** |

**QURAISHI, District Judge**

Plaintiff Jaquan Reddick, an inmate formerly confined at the Mercer County Correction Center ("MCCC") in Mercer County, New Jersey, brought this civil rights action under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"),  N.J. Stat. § 10:6-1 *et seq.*, against Defendants for alleged unconstitutional conduct related to Plaintiff's contraction of COVID-19 while incarcerated at MCCC in May 2020.  (Second Amended Complaint ("SAC"), ECF No. 53.) Before the Court is Defendants County of Mercer ("Mercer County"), Charles Ellis ("Ellis" or "Defendant Ellis"), Kenneth E. Fitzpatrick ("Fitzpatrick" or "Defendant Fitzpatrick"), and Stevie T. Clark's ("Clark" or "Defendant Clark") (collectively "County Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion to Dismiss" ECF No. 55); Brief on Behalf of Defendants, County of Mercer, Warden Charles Ellis, Sergeant Kenneth E. Fitzpatrick, and Correctional Police Officer Stevie T. Clark in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint with Prejudice ("Defendants' Brief")  (Defs.' Br., ECF

No. 55-5); Memorandum of Law in Opposition to Defendants' Motion to Dismiss   (Pl.'s Opposition Br., ECF No. 59); and County Defendants' Reply (Defs.' Reply Br., ECF No. 62.)

The Court has federal question jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.   The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.   For the reasons set forth below, the Court will grant Defendants' Motion to Dismiss, and dismiss the SAC without prejudice.   The Court will also dismiss County Defendants' request for a stay of discovery pending a decision on the Motion to Dismiss, (Defs.' Br., at 46–48), as moot.

## I.    <u>PROCEDURAL HISTORY</u>

On April 29, 2022, Plaintiff, represented by counsel, initiated this action by filing a Complaint, Demand for Discovery, Jury Demand in the Superior Court of New Jersey, Mercer County.  ("Complaint" ECF No. 2-1.)  In the original complaint, Plaintiff asserted claims against Mercer County, MCCC, Mercer County Sheriff's Office, and the New Jersey Department of Corrections ("NJDOC").  (*Id.* at 1–3.)  Plaintiff also asserted claims against defendants Ellis, John Kemler ("Kemler"), and Marcus Hicks ("Hicks"), in their individual and official capacities (*id.*, at 2–3) and John/Jane Does 1–10, and ABC Corp., 1–10 (*id.* at 1, 8.)  The complaint asserted a single count alleging that the defendants violated Plaintiff's rights to due process, equal protection, to be free from cruel and unusual punishment, and other rights, privileges, and immunities secured by the Constitution of the United States, the New Jersey State Constitution, the New Jersey Civil Rights Act, and/or the laws of the State of New Jersey.  (*Id.*, ¶¶ 38–43.)

2

On July 22, 2022, the Superior Court dismissed Plaintiff's claims with prejudice against defendant MCCC. (Order, ECF No. 2-7.) The complaint was dismissed without prejudice against Defendants Mercer County Sheriff's Office, and Kemler. (*Id.*) On August 19, 2022, Mercer County and Defendant Ellis filed an Answer to Complaint, Jury Demand, Separate Defenses, Cross-Claims, and Trial Attorney Designation. (Defs.' Answer, ECF No. 2-8.)

On December 1, 2022, Defendants NJDOC and Hicks (collectively "State Defendants") removed the matter to this Court. (Notice of Removal, ECF No. 1.) Thereafter, State Defendants filed a Motion to Dismiss on December 29, 2022. (State Defs.' Mot. to Dismiss, ECF No. 6.) On March 7, 2023, the County Defendants filed a letter requesting to join the State Defendants' Motion to Dismiss as to counts two through four. (County Defs.' Letter, ECF No. 16.) On March 8, 2023, the Court granted the County Defendants' request. (Mar. 18, 2023 Order, ECF No. 17.)

On July 18, 2023, the Court granted in part and denied in part the State and County Defendants' Motion to Dismiss. (July 18, 2023 Order, ECF No. 32.) The Court granted the Motion in part and dismissed with prejudice as to the NJDOC and Defendant Hicks in his official capacity in response to arguments that they are not "persons" subject to liability within the meaning of Section 1983 and the NJCRA and as to the County Defendants' argument that the Complaint engages in improper group pleading. (*Id.*) The remainder of the claims were dismissed without prejudice for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. (*Id.*) The Court also denied the Motion in part without prejudice as to Defendants' remaining arguments. (*Id.*)

On February 27, 2024, Plaintiff filed his First Amended Complaint and Jury Demand. (First Amended Complaint ("FAC"), ECF No. 37.) On March 30, 2024, the County Defendants

filed a Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. to Dismiss FAC, ECF No. 43.)  On April 3, 2024, the Court administratively terminated the motion to dismiss pending a pre-motion teleconference.  (Am. Text Ord., ECF No. 49.)  As a result of the conference that was held on April 10, 2024, Plaintiff was permitted to file a second amended complaint no later than May 17, 2024.  (Text Ord., ECF No. 50.)  On May 17, 2024, Plaintiff filed the second amended complaint.  (SAC, at 1–30.)

On June 14, 2024, the County Defendants moved to dismiss Plaintiff's Second Amended Complaint.  (Defs.' Mot. to Dismiss, at 1–2.)  Plaintiff opposed the motion in a Memorandum of Law in Opposition to Defendants' Motion to Dismiss filed on August 20, 2024.  (Pl.'s Opposition Br., at 1–21.)  On September 10, 2024, Defendants filed County Defendants Reply brief.  (Defs.' Reply Br., at 1–12.)  Accordingly, the matter is ripe for determination.

## II.    **SECOND AMENDED COMPLAINT**

Plaintiff alleges the following facts in the SAC.  Plaintiff contracted COVID-19 while incarcerated at the MCCC in May of 2020.  (SAC, ¶¶ 15, 19.)  Plaintiff names Mercer County, Ellis, Fitzpatrick, Clark, and several unspecified individuals and corporations as defendants.  (*Id.* at 2–3.)  Plaintiff sued Defendant Ellis in his individual and official capacities.  (*Id.*)

Plaintiff contends that in April of 2020, Governor Phil Murphy mandated COVID testing for all inmates and employees of the State of New Jersey's prison system.  (*Id.*, ¶ 16.)  Defendant Mercer County failed to institute mandated testing of inmates and employees, staff, contractors, officer, and/or other persons working at MCCC.  (*Id.*, ¶ 17.)  Officer Craig H. Wrenn contracted COVID-19 and was responsible for bringing COVID-19 into MCCC in approximately May of 2020.  (*Id.*, ¶ 18.)  Plaintiff contracted COVID-19 in May of 2020.  (*Id.*, ¶ 19.)  While sick with

4

COVID-19, Plaintiff was provided with no medical attention and/or treatment. (*Id.*, ¶ 20.) Plaintiff does not set forth facts that he communicated a need for medical attention, or medicine. (*See* SAC, ¶¶ 38, 39, 44, 70.) He also does not allege that Defendants Ellis and Mercer County denied reasonable requests for medical treatment, that necessary medical treatment was delayed for non-medical reasons, or that Defendants prevented Plaintiff from receiving recommended treatment for serious medical needs. (*Id.*)

Defendant Clark was the corrections officer in charge of the unit upon which Plaintiff was assigned. (*Id.*, ¶ 21.) Defendants Fitzpatrick and Clark comingled asymptomatic inmates with general population without testing for COVID-19. (*Id.*, ¶ 22.) Plaintiff alleges that Fitzpatrick and Clark knowingly did this with deliberate and conscious indifference and disregard for the rights, health, and safety of the inmate population, including Plaintiff. (*Id.*) Defendants Fitzpatrick and Clark also placed inmates who tested positive for COVID-19 into isolated solitary confinement for an extended period of five days before releasing those inmates back into the general population. (*Id.*, ¶ 23.)

While Plaintiff was sick with COVID-19, he claims Defendants Fitzpatrick and Clark placed him in solitary confinement because he was ill, for an extended period of five days. (*Id.*, ¶¶ 24, 27.) Plaintiff did not receive medications for the treatment of his COVID-19 symptoms. (*Id.*, ¶ 28.) However, Plaintiff does not describe what symptoms he experienced as a result of contracting COVID-19. (*See* SAC, ¶¶ 38–39, 44, 70.) Plaintiff was placed back into the general population after approximately five days in solitary confinement, and without additional testing for COVID-19. (*Id.*, ¶ 25.) Plaintiff does not specify which Defendant was responsible for returning him to general population. (*Id.*) Plaintiff alleges that Defendants Mercer County and

Ellis knew and approved of the practices of Defendants Fitzpatrick and Clark. (*Id.*, ¶¶ 21–25, 27–28.)

At some point, COVID-19 positive inmates were placed into one unit separate from inmates who were asymptomatic. (*Id.*, ¶ 26.) Plaintiff contends that he was unable to take proper necessary steps to prevent contracting COVID-19 because he was an inmate under Defendants' custody and control. (*Id.*, ¶¶ 29–31.) Plaintiff was also unable to take steps to treat COVID-19 or seek medical care and/or medication. (*Id.*, ¶¶ 32–37.)

## III.   <u>MOTION TO DISMISS STANDARD</u>

Defendants filed a motion to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp v. Twombly*, 560 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common

6

sense." *Iqbal.*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' —'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In deciding a motion to dismiss, a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d, 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations . . . ." *Twombly*, 550 U.S. at 555. However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Where a motion to dismiss attaches or relies on documents extrinsic to the pleadings, the court must first consider whether such documents may permissibly be considered. *Hinsinger v. Confier Ins. Co.*, Civ. No. 20-14753, 2022 WL 17820259, at *2 (D.N.J. Dec. 20, 2022). Courts may consider "document[s] integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *United States v. Estate of Elson*, 421 F. Supp. 3d. 1, 5 (D.N.J. 2019) (quoting *In re Asbestos Prod. Liab. Litig.* (No. VI), 822 F.3d 125, 134 n.s7

(3d Cir. 2016)).  When presented with extrinsic documents not properly considered on a motion to dismiss, the court may disregard them, deny the motion, or convert it into a motion for summary judgment and provide a reasonable opportunity for all parties to present material pertinent to the motion.  *See* Fed. R. Civ. P. 12(d); *Dix v. Total Petrochemicals USA, Inc.*, Civ. No. 10-3196, 2011 WL 2474215, at *2 (D.N.J. June 20, 2011).

## IV.    DISCUSSION

Plaintiff's Second Amended Complaint alleges civil rights violations under 42 U.S.C. § 1983 and the NJCRA,  N.J. Stat. § 10:6-1 *et seq*.  (SAC, ¶ 13.)  Before the Court is County Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.  (Defs.' Mot. to Dismiss, at  1–2.)  Defendants contend that Counts One (parts one and two), Two (parts one and two), Three (parts one and two), Four (parts one and two), Five (parts one and two), Six (parts one and two), Seven (parts one and two), and Eight (parts one and two) of the SAC fail to state a claim upon which relief may be granted.  The Court addresses each claim in turn.

Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws.  *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  "[T]o establish a section 1983 claim a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law."  *Id.*  (cleaned up).  Traditionally, acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *West v. Atkins*, 487 U.S. 42, 49 (1988) (citing *U.S. v. Classic*, 313 U.S. 299, 326 (1941)).  Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his

8

responsibilities pursuant to state law.  *Id.* at 50.

Where a party asserts a constitutional claim under § 1983 and New Jersey's state-law analogue, the NJCRA, a court's § 1983 analysis applies equally to the NJCRA claim.  *Falcone v. Dickstein*, 92 F.4th 193, 206 (3d Cir.) *cert. denied sub nom.  Murray-Nolan v. Rubin*, 144 S. Ct. 2560 (2024).  Therefore, the Court addresses the § 1983 and NJCRA claims together.

### A.    Use of Extrinsic Documents

County Defendants attach a copy of the following as Exhibits A–B: (1) Executive Order 103, dated March 9, 2020, and (2) all Executive Orders issued in April of 2020.  (Ex. A–B, ECF No. 55-2.)  Defendants also attach as Exhibits C–E: (3) copy of New Jersey Administrative Code for Correctional Facilities, (4) Executive Order 104, (5) PDF copy of CDC Morbidity and Mortality Weekly Report issued on May 6, 2020.  (Ex. C–E, ECF No. 55-3.)  Finally, as Exhibit F, County Defendants attach copies of all unreported cases referenced in County Defendants' Brief.  (Ex. F, ECF No. 55-4.)

Plaintiff attached as Exhibit A in his Opposition Brief, a New Jersey Department of Corrections press release dated May 1, 2020.  (Ex. A, ECF No. 59-1.)  Plaintiff attached as Exhibit B, a printout from Governor Murphy concerning the Department of Corrections' institution of universal COVID-19 testing dated May 1, 2020.  (Ex. B, ECF No. 59-2.)

County Defendants argue that it is appropriate for the Court to consider the extrinsic evidence because the SAC explicitly relies upon, bases most of its claims upon and directly references information and documents accessible to the public.  (Defs.' Reply Br., at 4.)  Plaintiff argues that Defendants have essentially filed a Motion for Summary Judgment by requesting the Court to consider an extensive amount of information outside of the four corners of the pleadings.

(Pl.'s Opposition Br., at 4.)

Here, the allegations in the SAC directly reference executive orders issued by Governor Murphy. (SAC, ¶¶ 52–53.) The SAC also references CDC guidance regarding COVID-19. (*Id.*, ¶ 44.) Therefore, the Court finds these exhibits are "integral to or explicitly relied upon in the complaint." *Estate of Elson*, 421 F. Supp. 3d at 5. Accordingly, these exhibits may permissibly be considered for the purposes of the instant Motion to Dismiss. *Id.*

### B.    Conditions of Confinement Claims

In Counts One, Two, Three, and Four of the SAC, Plaintiff asserts claims under § 1983, challenging the conditions of confinement in MCCC by the County Defendants under the Eighth and Fourteenth Amendments of the United States Constitution. (SAC, ¶¶ 64–120. )

The Eighth Amendment is applicable to the States through the Due Process Clause of the Fourteenth Amendment and prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991). The Eighth Amendment "was designed to protect those convicted of crimes and consequently the Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions." *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) ("*Hubbard I*") (quoting *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (citation omitted) (internal quotations omitted)). Thus, the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until "after sentence and conviction." *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989). As such, when pretrial detainees challenge their conditions of confinement, the Court must consider whether there has been a violation of the Due Process Clause of the Fourteenth Amendment. *Hubbard v. Taylor*, 538 F.3d 229, 241 (3d Cir. 2008).

10

Because Plaintiff was a pretrial detainee at MCCC in May of 2020, the Fourteenth Amendment's Due Process Clause governs his claims as opposed to the Eighth Amendment, which applies to convicted prisoners. *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979). Accordingly, the Court will dismiss with prejudice, Plaintiff's Eighth Amendment claims in Counts One, Two, Three, and Four of the SAC. (SAC, ¶¶ 64–120.) The Court will consider the claims under the Fourteenth Amendment.

### 1.    Warden Charles Ellis

In Count Two, part one of the SAC, Plaintiff challenges the conditions of confinement and asserts that Defendant Ellis violated his rights under the Fourteenth Amendment by: (a) placing him in solitary confinement, and (b) supervisor liability claims. In Count Six, part one, Plaintiff alleges this conduct also violates the New Jersey Constitution, and he brings claims against Ellis under the NJCRA, N.J. Stat. Ann. § 10:6-2 *et seq*.

When a pretrial detainee claims that the conditions of his confinement violate his due process rights, "the proper inquiry is whether those conditions [at issue] amount to punishment of the detainee." *Bell*, 441 U.S. at 535; *Carson v. Mulvihill*, 488 F. App'x 554, 559 (3d Cir. 2012). A pretrial detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. *Bell*, 441 U.S. at 538–39. However, a pretrial detainee may be subject to "the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536–37. Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." *Id.* at 539.

11

Accordingly, the standard for determining whether conditions of confinement violate Due Process is: "whether the questioned "restrictions and practices" (1) "are rationally related to a legitimate nonpunitive governmental purpose[,]" and (2) "whether they appear excessive in relation to that purpose." *Carson*, 488 F. App'x at 560 (citing *Bell*, 441 U.S. at 561)).

The deliberate indifference standard applies both in cases involving prisoners and pretrial detainees. *Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016). ""[D]eliberate indifference' is 'the equivalent of recklessly disregarding [a] risk' of serious harm to the prisoner." *Gause v. Diguglielmo*, 339 F. App'x 132, 134 (3d Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

### a.    Solitary Confinement Claims

Plaintiff alleges that Defendant Ellis, with deliberate and conscious indifference, violated the Fourteenth Amendment of the United States Constitution by placing Plaintiff in solitary confinement for an extended period of time without justification (SAC, ¶¶ 89, 92) and without substantive and/or procedural due process (*Id.*, ¶ 100.)

Defendant Ellis argues that Plaintiff's claims are directly contradicted by the SAC, where Plaintiff conceded being placed in isolation after contracting COVID "without any cause other than he was ill." (Defs.' Br., at 20.)  Defendant Ellis contends that there was no intent to punish by placing Plaintiff in solitary confinement, and isolation was for the health and safety of all inmates. (*Id.* at 25–26.)  Plaintiff generally does not directly address Defendants' arguments in his opposition to dismissal. (Pl.'s Opposition Br., at 7–13.)  Rather he asserts that he has pled facts sufficient for the case to proceed to the discovery phase. (*Id.* at 12.)

In the instant case, Plaintiff does not demonstrate how the temporary deprivation of liberty

in solitary confinement due to his illness amounts to punishment.  (*See* SAC, ¶¶ 89, 92, 100.)

Without pleading specific facts, Plaintiff alleges that Defendant Ellis was personally involved with

the decision to place Plaintiff in solitary confinement for an extended period "without justification

for such punishment."  (*Id.*, ¶ 89.)  He states that this conduct subjected him to inhumane

conditions, (*id.*, ¶ 92), and deprived him of due process.  (*Id.*, ¶ 100.)

Similarly, plaintiff in *Steele v. Cicchi*, 855 F.3d 494 (3d Cir. 2017), argued that his

placement in administrative segregation prior to an adjudication of guilt amounted to punishment.

*Id.* at 504.  The Third Circuit held that prison officials' concern with maintaining internal security

when transferring pretrial detainee to administrative segregation was a legitimate governmental

objective.  *Id.* at 505.  Officials did not violate detainee's substantive due process right to be free

from punishment on such basis, since prison officials had been informed that pretrial detainee was

conducting an illegal bail bonds scheme, and placement in administrative segregation mitigated

against security risks and allowed for continued investigation into alleged scheme without

interference from pretrial detainee.  *Id.*

Here, Plaintiff's placement in solitary confinement was rationally related to a legitimate

nonpunitive governmental purpose.  *See Carson,* 488 F. Appx at 560.  That purpose was to curb

the spread of the COVID-19 virus consistent with the prevailing CDC recommendations, including

physical distancing and prompt quarantine of exposed persons.[11]  Additionally, the restriction of

placing Plaintiff in solitary confinement when he was ill with COVID was not excessive in relation

---

[11] Morbidity and Mortality Weekly Report (MMWR), Summary of Guidance for Public Health Strategies to Address High Levels of Community Transmission of SARS-Cov-2 and Related Deaths, December 2020, available at https://www.cdc.gov/mmwr/volumes/69/wr/mm6949e.htm (last visited January 8, 2025).

to that purpose.  *Carson,* 488 F. Appx at 560.  Therefore, transferring Plaintiff to solitary confinement did not violate his substantive due process rights to be free from punishment prior to adjudication of guilt.  *Bell*, 441 U.S. at 538–39.

### b.    Supervisor Liability Claims

Plaintiff asserts claims under 42 U.S.C. § 1983 in violation of the Fourteenth Amendment against Defendant Ellis for failing to develop, implement and/or enforce policies and procedures to prevent the spread of COVID-19.  (SAC, ¶¶ 30, 34, 43, 45, 51, 55, 57.)  He also asserts that Ellis failed to establish and follow COVID-19 protocols, including requiring universal COVID-19 testing for inmates and employees.  (*Id.*, ¶ 51, 53, 55, 57.)

Plaintiff further alleges that Defendant Ellis failed to properly train and/or supervise guards, staff, and other employees in the proper procedures to prevent the spread of COVID-19. (SAC, ¶ 49.)  Plaintiff contends that Ellis had knowledge that Plaintiff would be susceptible to contracting COVID-19 due to living in close quarters.  (*Id.*, ¶ 41.)

Defendant Ellis maintains that publicly available documents contradict Plaintiff's contentions that Ellis was a Mercer County employee with the power to develop and implement policies who was personally involved in the decision-making process.  (Defs.' Br., at 22.) Moreover, Ellis argues that the SAC contradicts Plaintiff's claims that Ellis failed to implement proper procedures to prevent the spread of COVID-19.  (*Id.* at 22.)  Defendant Ellis also argues that separating COVID-19 positive inmates in solitary confinement before returning them to general population comports with prevailing medical authority on COVID-19 treatment at the time.  (*Id.* at 22–25.)

In opposition to dismissal, Plaintiff alleges that Defendant Ellis was responsible for the

oversight of the MCCC, and that fact alone is sufficient for a permissible and logical conclusion that he was involved in the activities as alleged in the SAC. (*Id.* at 9.)

There are two bases for supervisory liability under 42 U.S.C. § 1983. *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). First, "supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). Second, supervisors "can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations.'" *Id.* A plaintiff must provide facts suggesting that the defendant supervisor "had contemporaneous, personal knowledge of the alleged violations and acquiesced in it" in order to support the first type of claim. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988).

To hold a supervisor liable for their deficient policies the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: "(1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). Typically, plaintiffs allege supervisory liability by alleging the supervisor's awareness of a pattern of similar constitutional injuries and failure to respond to such misconduct. *Id.* at 134. To establish liability for failure to train, discipline or supervise, a plaintiff must show that policymakers were on actual or constructive notice that particular flaws in their training, discipline or supervision caused

subordinate officials to violate citizens' constitutional rights, which generally requires knowledge of a prior pattern of similar incidents and circumstances. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Montgomery v. DeSimone*, 159 F.3d 120, 127 (3d Cir. 1998). "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d, 347, 353 (3d Cir. 2005) (quoting *Rode,* 845 F.2d at 1207)).

Here, Plaintiff fails to plead sufficient facts to establish supervisor liability under either theory of liability. *See Santiago*, 629 F.3d at 129 n.5. Under the first theory of liability, Plaintiff fails to identify any policy that Defendant Ellis established and maintained. *Id.* He generally points to Ellis being responsible for the "development and implementation of policies, procedures and standards designed to protect inmates at MCCC from COVID-19" without actually identifying the policy or any details surrounding said policy. (*See* SAC, ¶ 6.) Instead, Plaintiff complains that he cannot provide specific facts without being provided additional discovery. (*See e.g.* Pl.'s Opposition Br., at 10–11.) Plaintiff also fails to supply sufficient facts to support his claim that Defendant Ellis "failed to follow proper and accepted COVID-19 protocol." (SAC, ¶¶ 55, 57.) Quarantining Plaintiff from general population for five days while he was ill precisely follows the CDC guidance that Plaintiff now alleges violates his constitutional rights. (*Id.*, ¶¶ 23–25, 27.)

Plaintiff also fails under the second theory of liability because he does not allege facts demonstrating that Ellis "had knowledge of and acquiesced in [his] subordinates' violations." *Santiago*, 629 F.3d at 129 n.5. Plaintiff alleges that Defendant was responsible for the oversight

and supervision of MCCC by virtue of his position as warden.  (SAC, ¶ 6.)  However, Plaintiff raises his claims without providing specific facts suggesting that Ellis had personal knowledge that Fitzpatrick and Clark violated Plaintiff's constitutional right to be protected from contracting COVID-19, or that their actions even constituted a constitutional violation.  (*Id.*, ¶ 42.)  In short, Plaintiff fails to plausibly allege that Defendant Ellis directed others to violate Plaintiff's rights.

Finally, Plaintiff's allegations in support of his supervisor liability claims for failure to train are wholly conclusory.  (SAC, ¶ 49.)  Plaintiff alleges that Defendant "ha[d] knowledge of the dangers of COVID-19" and failed to properly train and/or supervise guards, staff, and/or other employees in the proper procedures to prevent the spread of COVID-19.  (*Id.*)  Plaintiff does not allege a pattern of similar incidents where Fitzpatrick and Clark violated pretrial detainees' constitutional rights by failing to follow established protocol.  (*Id.*)  As such, these allegations predicated on failure to train also do not plead sufficient facts to support a claim for relief.

### 2.    Sgt. Kenneth E. Fitzpatrick and Officer Stevie T. Clark

In Counts Three, part one and Four, part one of the SAC, Plaintiff alleges that Defendants Fitzpatrick and Clark violated the Fourteenth Amendment by placing Plaintiff in solitary confinement for an extended period of time without justification (SAC, ¶¶ 107, 117), and without substantive and/or procedural due process (*id.*, ¶ 110, 120.)  In Counts Seven, part one and Eight, part one, Plaintiff alleges this conduct also violates the New Jersey Constitution, and he brings claims against Fitzpatrick and Clark under the NJCRA, N.J. Stat. Ann. § 10:6-2 *et seq*.

Defendants Fitzpatrick and Clark argue that all counts pled against them fail to state conditions of confinement claims and should be dismissed with prejudice because the SAC does not establish deliberate indifference.  (Defs.' Br., at 31, 34.)  They further contend that none of the

allegations in the SAC rise to the level of conduct done solely for punishment.  (*Id.* at 32.)  In opposition to dismissal, Plaintiff contends that a cognizable claim as to both Defendants Fitzpatrick and Clark have been plead pursuant to both §1983 and the NJCRA.  (Pl.'s Opposition Br., at 15.)

Here, Plaintiff has not pled facts to support an inference that the temporary deprivation of liberty in solitary confinement amounted to punishment.  (*See* SAC, ¶¶ 89, 92, 100.)  When a pretrial detainee claims that the conditions of his confinement violate his due process rights, "the proper inquiry is whether those conditions [at issue] amount to punishment of the detainee." *Bell*, 441 U.S. at 535; *Carson v. Mulvihill*, 488 F. App'x at 559.  Plaintiff contends that Defendants Fitzpatrick and Clark caused him to be locked in solitary confinement for an extended period.  (*Id.*, ¶¶ 107, 116–17.)  He specifically alleges that he was returned to general population after approximately five days in solitary confinement.  (*Id.*, ¶¶ 24–25.)

In *Parkell v. Morgan*, 682 F. App'x 155 (3d Cir. 2017), the Third Circuit held that a pretrial detainee's allegations that he was placed in solitary confinement for twenty days for possessing a stapler and piece of a small paperclip were sufficient to state a claim for unconstitutional punishment.  *Id.* at 158.  The Third Circuit determined that "[i]t was reasonable to infer that confining detainee in a restrictive unit for 20 days was an arbitrary, or excessive, response to his having commonplace items, and that defendant was acting to punish detainee, rather than to maintain security and discipline at the prison." *Id.*  Contrasted with the instant case, where Plaintiff was placed in solitary confinement to contain the spread of COVID-19, which is rationally related to a legitimate nonpunitive governmental purpose.  *See Carson*, 488 F. App'x at 560 (citing *Bell*, 441 U.S. at 561)).

18

Plaintiff also generally alleges that Fitzpatrick and Clark were involved in the decision to place sick inmates, including Plaintiff, into solitary confinement "for no other reason that the inmates, including Plaintiff, were ill." (SAC, ¶¶ 106, 116.) By his own words, Plaintiff asserted facts that he was ill at the time he was placed into solitary confinement. (*See* SAC, ¶ 106.) Plaintiff was contained in solitary confinement for five days while he was sick with COVID. (SAC, ¶¶ 24–25.) Under these circumstances, Plaintiff's confinement was not extended and was not done for punitive purposes. *See Carson*, 488 F. App'x at 560 (citing *Bell*, 441 U.S. at 561)).

Accordingly, the SAC pleadings fail to plausibly support conditions of confinement claims against Defendants Ellis, Fitzpatrick, and Clark. The Court will dismiss claims against Ellis in Count Two, part one and Count Six, part one. The claims against Fitzpatrick in Count Three, part one and Count Seven, part one is also dismissed. Finally, the Court will dismiss the claims against Clark in Count 4, part one and Count 8, part one. These claims will be dismissed without prejudice.

### C.    Deliberate Indifference Claims

Plaintiff brings a second claim asserting deliberate indifference claims in Count Two, part two of the SAC against Ellis, Count Three, part two against Fitzpatrick, and Count Four, part two against Clark. (SAC, ¶¶ 87–88, 91, 94, 97–99, 104–105, 108–109, 114–115, 118–119.) In part two of Counts Six, Seven, and Eight, Plaintiff alleges this conduct also violates the New Jersey Constitution, and he brings claims against Ellis under the NJCRA, N.J. Stat. Ann. § 10:6-2 *et seq*.

### 1.    Inadequate Medical Care Claims Against Defendant Ellis

Plaintiff alleges that Defendant Ellis failed to provide him with adequate medical attention and/or treatment. (SAC, ¶¶ 38–39, 44, 70.) Plaintiff also argues that Ellis failed to adequately protect him from personal injury or disease. (*Id.*, ¶¶ 44–45.)

19

Defendant Ellis maintains that this claim should be dismissed because the SAC fails to sufficiently plead that mere exposure and eventual contraction of COVID-19 amounts to deliberate indifference. (Defs.' Br., at 27.)

The Due Process clause requires the government to provide appropriate medical care. *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983); *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993). The standards under the Due Process Clause are the same as the standards under the Eighth Amendment for measuring the adequacy of medical treatment. *Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir. 1987) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).

To state a claim of inadequate medical care in violation of the Eighth Amendment, an inmate must generally allege facts showing (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). A court may also determine the seriousness of the inmate's medical need by reference to the effect of denying a particular treatment. *Id.* A condition is serious if denial of a particular treatment would cause death, degeneration, or extreme pain. *See id.*

Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law." *See Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000). To be liable, the prison official must know of and disregard an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at

20

836–37 (1994). A plaintiff, therefore, must allege and plead enough factual matter to allow the court to infer reasonably that the official was subjectively aware of a substantial risk of serious harm and that the official disregarded that risk. *See id.*; *see also Iqbal*, 556 U.S. at 678.

Courts in the Third Circuit have found deliberate indifference in a variety of contexts, including where: (1) prison authorities deny reasonable requests for medical treatment; (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it; (3) necessary medical treatment is delayed for non-medical reasons; and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017). Regardless of the context, however, the defendant must have, and the plaintiff must allege, the sufficiently culpable state of mind noted above. *Farmer*, 511 U.S. at 838 ("[O]ur cases mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment.").

In Count Two, part two of the SAC Plaintiff asserts that Defendant Ellis violated his constitutional rights by failing to provide adequate medical attention or treatment. (SAC, ¶¶ 85, 91, 94, 97.) Plaintiff maintains that he did not receive medical attention after contracting COVID-19. (*Id.*, ¶ 94.) Plaintiff also asserts the identical claims against Defendant Ellis in Count Six, part two pursuant to the NJCRA. (*Id.*, ¶¶ 142, 148, 151, 154.)

Here, Plaintiff has not set forth sufficient facts to support an inference that he suffered a serious medical need. *See Estelle*, 429 U.S. at 106. Plaintiff likewise does not plead facts that he communicated a need for medical attention, or medicine. (*See* SAC, ¶¶ 38, 39, 44, 70.) He also does not allege, for example, that Ellis denied reasonable requests for medical treatment, that necessary medical treatment was delayed for non-medical reasons, or that Ellis prevented Plaintiff

21

from receiving recommended treatment for serious medical needs. *Id*; *See Pearson*, 850 F. 3d at 538. Thus, Plaintiff did not set forth facts to establish that Defendant Ellis was deliberately indifferent to Plaintiff's medical need. *See Estelle,* 429 U.S. at 106.

### 2.     Commingling Claims Against Defendants Ellis, Fitzpatrick, and Clark

Plaintiff alleges in his SAC, that Defendants Ellis, Fitzpatrick, and Clark commingled asymptomatic and symptomatic inmates, including inmates displaying symptoms of illness. (SAC, ¶¶ 87, 98.) Plaintiff also alleges that those Defendants were responsible for placing inmates who previously tested positive for COVID-19 into general population. (SAC, ¶ 88, 99.) Plaintiff claims that these actions were taken with deliberate indifference to his constitutional rights. (*Id.*)

In support of dismissal, Ellis, Fitzpatrick, and Clark allege that absent supportive facts, the only way to diagnose COVID is through PCR or antigen testing. (Defs.' Br., at 23.) Defendants further allege that segregating previously COVID-19 positive inmates before returning them to general population was a process that was routinely performed. (*Id.* at 23–24). Finally, Defendant asserts that the SAC does not allege that either Fitzpatrick or Clark knew that certain inmates were COVID-19 positive, or that either Defendant was aware that the inmates exhibited symptoms. (*Id.*)

The Court agrees. Plaintiff's claims are wholly conclusory because he fails to allege facts that commingling previously COVID positive inmates posed an excessive risk to his health or safety. (*See* SAC, ¶¶ 87–88, 98–99.) In the SAC, Plaintiff alleges that Officer Craig H. Wrenn introduced COVID-19 into MCCC. (*Id.*, ¶ 18.) That same month, Plaintiff contracted the disease. (*Id.*, ¶ 19.) Plaintiff does not provide any specific facts that he was exposed to symptomatic inmates. (*Id.*, ¶¶ 87–88, 98–99.) Nor does he describe any symptoms of illness that other inmates displayed. (*Id.*) Plaintiff also fails to offer facts that Ellis, Fitzpatrick, and Clark, recklessly

22

disregarded or were even aware of any risk of harm. *See Gause*, 339 F. App'x at 134. For instance, Plaintiff fails to allege that those Defendants personally administered COVID-19 tests to confirm positive diagnosis, or that they personally witnessed any inmates displaying COVID-19 symptoms. As such, Plaintiff fails to identify what risk of harm he suffered. *Gause*, 339 F. App'x at 135.

Accordingly, the Court will dismiss the § 1983 claims in part two of Counts Two, Three and Four of the SAC. The Court will likewise dismiss the corresponding NJCRA claims against Ellis, Fitzpatrick, and Clark in part two of Counts Six, Seven, and Eight. These claims will be dismissed without prejudice.

### D. Claims Against the County of Mercer and *Monell* Liability

The Court will now turn to the remaining claims against Defendant Mercer County. Defendant Mercer County argues that the SAC fails to plead sufficient allegations required to assert a claim under *Monell*. (Defs.' Br., at 41; Defs.' Reply Br. 11–12.) Mercer County specifically alleges that Counts One and Five of the SAC suffer from fatal deficits that require dismissal with prejudice. (*Id.*)

Plaintiff argues in opposition, that Counts One and Five pertaining to Mercer County are sufficient to survive a motion to dismiss because the SAC sets forth a basis, under the *Monell* standard, upon which relief may be granted. (Pl.'s Opposition Br., at 17, 20–21.) In reply, Mercer County argues that the SAC refers to no policies that led to a violation of Plaintiff's constitutional rights. (Defs.' Reply Br. 11–12.) Mercer County also alleges that Plaintiff fails to identify the policy or procedure that caused him harm, which forms the crux of his *Monell* claim. (*Id.*)

Section 1983 claims against a municipality may proceed in two ways: (1) "plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or [(2)] that they were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (quotation omitted).

The Supreme Court of the United States addressed the issue of municipal liability in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Under *Monell*, municipalities are considered persons subject to liability under Section 1983 for violations of civil rights caused by municipal officials. *See id.* at 690, n.4. However, a municipality cannot be considered liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory. *Id.* at 694. Thus, under *Monell*,

> a local government may not be sued under § 1983 for an injury inflicted solely by its employee or agents. Instead it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* The Supreme Court further articulated that local governments "may be sued for constitutional deprivations visited pursuant to government 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id.* at 694. Notably, Congress included the term "custom" in 28 U.S.C. § 1983 "because of the persistent and widespread discriminatory practices of state officials. . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691 (quoting *Aidekes v. H.S. Cress & Co.*, 398 U.S. 144 (1970)).

24

Thus, a litigant seeking to impose liability on a municipality under Section 1983 must plead sufficient facts to demonstrate that such a custom or policy caused the constitutional violation at issue in order to obtain a judgment against a municipality. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985); *see also Natale v. Camden County Correctional Facility*, 318 F.3d 575, 584 (3d Cir. 2003). To sustain a Section 1983 claim against a municipality, "at the very least, there must be an affirmative link between the policy [or custom] and the particular violation alleged." *Tuttle*, 471 U.S. at 823. Further, it is insufficient for a plaintiff's allegations to be "wholly conclusory without one tidbit of factual support." *Kilagriff v. Strunk*, Civ. No. 18-10120, 2019 WL 1434763, at *5 (D.N.J. Mar. 31, 2019). Rather, a plaintiff must "back up his claims with facts, which, when accepted as true, [provide] support as to the plausibility of his *Monell* claims." *Id.*

Plaintiff alleges in Count One, part one (Conditions of Confinement) that

> Defendant County of Mercer was acting under color of law under the laws of the United States of America. (SAC, ¶ 65.) Upon information and belief, Defendant County of Mercer was personally involved with the decision to place sick inmates, including Plaintiff, into isolated, solitary confinement for extended periods for no other reason tha[n] the inmates, including Plaintff, were ill. (*Id.*, ¶ 68.) Upon information and belief, Defendant County of Mercer was involved with the commingling of inmates within general population, despite symptoms of illness in certain inmates. (*Id.*, ¶ 66.) Upon information and belief, Defendant County of Mercer was involved with the decision to place inmates back into general population after previously testing positive for COVID-19. (*Id.*, ¶ 67.) Defendant County of Mercer subjected Plaintiff to inhumane conditions, personal abuse, personal injury, and disease, subjecting him to cruel and unusual punishment by locking him in isolated, solitary confinement for an extended period without justification for such punishment. (*Id.*, ¶ 72.) Defendant County of Mercer knew or should have known that due to the living conditions in MCCC, Plaintiff, as an inmate under their custody and control, was

25

particularly susceptible to contracting COVID-19, a disease which can be fatal, and failed to take adequate measures to prevent Plaintiff from contracting COVID-19 despite knowledge of the risk of substantial harm. (*Id.*, ¶ 73.) Plaintiff was improperly, inhumanely, cruelly, and without justification, locked in isolated, solitary confinement for an extended period because he was ill. (*Id.*, ¶ 75.) Defendant County of Mercer acted with deliberate and conscious indifference to Plaintiff's constitutional rights which were violated by Defendant by permitting inmates, such as Plaintiff, to be placed in isolated confinement without substantive and/or procedural due process. (*Id.*, ¶ 80.)

Further, Plaintiff alleges in Count One, part two (Deliberate Indifference) that

Upon information and belief, Defendant County of Mercer was involved with the commingling of inmates within general population, despite symptoms of illness in certain inmates. (SAC, ¶ 66.) Upon information and belief, Defendant County of Mercer was involved with the decision to place inmates back into general population after previously testing positive for COVID-19. (*Id.*, ¶ 67.) Defendant County of Mercer subjected Plaintiff to inhumane conditions, personal abuse, personal injury, and disease, discriminating against him by allowing Plaintiff to be placed at risk of substantial harm by failing to and/or ensuring that adequate medical treatment and/or care was provided to inmates infected with COVID-19. (*Id.*, ¶ 70.) Plaintiff contracted COVID-19 and did not receive appropriate medical attention and/or treatment and/or medication. (*Id.*, ¶ 74.) Defendant County of Mercer acted with deliberate and conscious indifference to Plaintiff's constitutional rights which were violated by Defendants in failing to provide adequate medical attention and/or treatment. (*Id.*, ¶ 77.) Defendant County of Mercer acted with deliberate and conscious indifference to Plaintiff's constitutional rights which were violated by the knowing commingling symptomatic inmates with asymptomatic inmates. (*Id.*, ¶ 78.)

The SAC also alleges theories of liability under 42 U.S.C. § 1983 in violation of the Fourteenth Amendment against Mercer County for failing to develop, implement and/or enforce policies and procedures to prevent the spread of COVID-19. (SAC, ¶ 69.) In Count Five, Plaintiff

26

alleges this conduct also violates the New Jersey Constitution, and he brings claims against Mercer County under the NJCRA, N.J. Stat. Ann. § 10:6-2 *et seq*.

Mercer County is considered a "person" who is subject to suit under § 1983 and the NJCRA. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 and n. 55 (1978) ("Local governing bodies" and local officials in their official capacities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief.")

Here, Plaintiff fails to allege sufficient facts to establish an unconstitutional policy or custom of Mercer County that led to his injuries. *See Forrest*, 93 F.3d at 105. Plaintiff does not point to any specific Mercer County custom or policy that led to an injury. (SAC, ¶ 42.) Accordingly, Mercer County is not liable under *Monell*. *See Monell*, 436 U.S. at 690, n.4.

Defendant Mercer County's Motion to Dismiss as to the 42 U.S.C. § 1983 claims in Counts One, parts one and two, will be granted. Dismissal of the policy claims in Count One will likewise be granted. These claims will be dismissed without prejudice as to Defendant Mercer County.

### E. Qualified Immunity

Defendants Ellis, Fitzpatrick, and Clark argue that they are entitled to qualified immunity because there was no clearly established right at the time of Plaintiff's alleged violation. (Defs.' Br., at 40.) However, Plaintiff argues that he is entitled to pursue these claims when a blanket assertion of qualified immunity is insufficient. (Pl.'s Opposition Br., at 16.)

"[T]he judicially created doctrine of qualified immunity" shields governmental officials from suit and from liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Peroza-Benitez v. Smith*, 994 F.3d 157, 164–65 (3d Cir. 2021). Qualified immunity "balances two important interests—the

need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 164 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). This doctrine provides a government official immunity from suit rather than a mere defense from liability. *Pearson*, 555 U.S. at 231. Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law." *Butz v. Economou*, 438 U.S. 478, 506-07 (1978). Notably, qualified immunity "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd,* 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

Having previously dismissed all counts of the SAC, the Court need not reach Defendants' argument that they are entitled to qualified immunity. .

## V.    **CONCLUSION**

For the reasons above, the Court will grant County Defendants' Motion to Dismiss, and will dismiss Counts One (parts one and two), Two (parts one and two), Three (parts one and two), Four (parts one and two), Five (parts one and two), Six (parts one and two), Seven (parts one and two) and Eight (parts one and two) of Plaintiff's SAC without prejudice. Inasmuch as the Court has ruled on the Motion to Dismiss, Defendants' request for a stay of discovery is moot and will be dismissed. An appropriate order follows.


Date: January 13, 2025

28

_s/ Zahid N. Quraishi__
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

29